UNITED STATES of America ex rel. Max FEINBERG

v.

Alfred T. RUNDLE.

No. 69–580.

United States District Court, E. D. Pennsylvania.

June 29, 1970.

David Kairys, Asst. Defender, Melvin Dildine, Chief, Appeals Division, Vincent J. Ziccardi, Defender, Philadelphia, for petitioner.

Walter W. Cohen, Asst. Dist. Atty., James D. Crawford, Deputy Dist. Atty., Richard A. Sprague, First. Asst. Dist. Atty., Arlen Specter, Dist. Atty., for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

As the United States Supreme Court has stated: "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Cole v. State of Arkansas, 333 U.S. 196, at 201, 68 S.Ct. 514 at 517, 92 L.Ed. 644 (1948). But this is not our case, and, after a complete review of the state court records, I cannot agree with relator's claim that he was convicted by the appellate courts of Pennsylvania of a charge on which he was never tried. For reasons to be elaborated I shall deny his petition for writ of habeas corpus.

## I.

## SHORT HISTORY OF THE CASE

This case, as tragic as it was inappropriate to the Christmas season of 1963 when it arose, has had a full existence in the Courts of the Commonwealth of Pennsylvania. Between December 23 and December 30, 1963, thirty-one persons died in skid-row Philadelphia as a result of methanol, or wood alcohol poisoning. In many of the cases the methanol was found to have come from the jelly-like product, industrial Sterno which was 54% methanol.

Relator Max Feinberg owned and operated a cigar store in the area of the tragedy. There among other items he sold tobacco, candy, and industrial Sterno. As the single retailer of the Sterno in question relator was arrested and indicted on thirty-one counts charging involuntary manslaughter and on companion bills charging violations of the Pharmacy Act 63 P.S. § 390–1 et seq.

After a three day trial from April 19 to 21, 1965, Judge Charles L. Guerin, sitting without a jury, found relator "guilty of involuntary manslaughter on seventeen bills of indictment and guilty of violating the Pharmacy Act on twenty-five bills of indictment." (from the "Adjudication" and "Supplemental Adjudication" by Judge Guerin). On January 9, 1967 relator was sentenced to not less than one nor more than three years on each of bills number 1934, 1940, 1942, 1946 and 1949, March Sessions, 1964, the sentences to be served consecutively. At sentencing, Judge Guerin stated: "Upon all other Bills, those charging involuntary manslaughter and those charging violation of the Pharmacy Act, sentence is suspended." (Sentencing Notes of Testimony, p. 8.)

The five bills for which sentence was imposed were appealed to the Superior Court. The four bills here in question were affirmed and bill 1946 was reversed. Commonwealth v. Feinberg, 211 Pa.Super. 100, 234 A.2d 913 (1967). For a six-judge majority Judge Mont-

gomery held that relator had not violated the Pharmacy Act and thus was not guilty of misdemeanor-manslaughter. But said the Superior Court the evidence justified the conviction of relator for involuntary manslaughter. Judge Hoffman dissented. He opposed affirming the convictions on the grounds of involuntary manslaughter, stating that "the record and opinion of the lower court tend to indicate that the judge considered only the Pharmacy Act and not criminal negligence in general." 211 Pa.Super. 100, at 116, 234 A.2d 913 at 920.

The Pennsylvania Supreme Court unanimously affirmed the Superior Court, concluding that "Judge Guerin did, in fact, consider the issue of involuntary manslaughter and did find appellant guilty of involuntary manslaughter." Commonwealth v. Feinberg, 433 Pa. 558, at 573, 253 A.2d 636 at 644 (1969).

Thereafter, relator filed the instant petition for writ of habeas corpus. Argument was held on January 19 of this year, and all briefing was concluded by April 1, 1970 (see docket entry No. 5). Although I ordered the complete state court record on December 3, 1969, it became available only during the second week of this month. I must now detail why, after a complete review of that record, I find myself in agreement with the thirteen Pennsylvania appellate Judges who have voted to affirm relator's convictions on bills Nos. 1934, 1940, 1942 and 1949.

## II.

### WHAT THE STATE COURT RECORD REVEALS

Relator's major argument is that he was convicted of a charge on which he was never tried. He reiterates time and again that he was tried *only* for misdemeanor-manslaughter. What does the record show?

First of all, each of the four bills of indictment here in question contains the following inscription:

"Charge: Involuntary Manslaughter"
" * * * Max Feinberg did unlawfully kill and slay one _____ contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

While relator claims that "it was clear to everyone that [he] was only being tried for misdemeanor-manslaughter," he does admit that "the indictments can be read to charge negligent manslaughter." (Relator's brief, p. 8.)

At the very outset of the trial, the Assistant District Attorney stated:

"Your Honor, the Commonwealth is ready to proceed with thirty-one Bills of Indictment for involuntary manslaughter against Max Feinberg, and I believe it is thirty-nine Bills of Indictment for violation of the Pharmacy Act against Max Feinberg." (Trial Notes of Testimony, p. 2, Hereinafter "N.T.")

This is *not* a statement that relator is to be tried only for misdemeanor-manslaughter. The Commonwealth speaks of indictments for involuntary manslaughter, and, as a separate matter, indictments for violation of the Pharmacy Act.

As the trial proceeded, dealing with the deaths of the four persons referred to in bills 1949, 1934, 1940 and 1942, the Assistant District Attorney set the stage each time:

"Your Honor, at this point I am going to proceed with Bill 1949 of March Sessions, 1964, charging defendant with the death of Juanita Williams." (N.T., p. 73.)

"Next is Lynwood Scott, Bill of Indictment 1934, March 1964, and the accompanying Bill on the violation of the Pharmacy Act." (N.T., p. 124.)

"Your Honor, instead of the first one listed there, will you go to the next one which is John Streich, whom the previous witness called Stretch.

"This is Bill No. 140, March, 1964, and the companion Bill on the viola-

tion of the Pharmacy Act." (N.T., p. 145.)

"Proceeding now to James Newsome, Indictment No. 1942, and the companion Bill, violation of the Pharmacy Act." (N.T., p. 154.)

Thus in the case of the death of Lynwood Scott, John Streich, and James Newsome, the Assistant District Attorney noted involuntary manslaughter indictments numbers 1934, 1940 and 1942 *and* companion bills on the violation of the Pharmacy Act. Only in the case of Juanita Williams was there only a single indictment—charging involuntary manslaughter—and this possibly because Mr. Williams bought the Sterno from relator. (N.T., p. 84.)

Counsel for relator, in support of his position that relator was in fact tried only on misdemeanor-manslaughter, makes the following argument:

"When it appeared that violations of the Pharmacy Act had not been proved by the Commonwealth as to some of the [31] deaths and that a directed verdict must be granted on those bills, defense counsel, the district attorney, and the trial court agreed that the verdicts must also be directed on the 'accompanying' manslaughter bills." (Relator's brief, p. 7.)

That this is inaccurate can be demonstrated by a close reading of the transcript, N.T., pp. 170–171. During a sidebar discussion, Judge Guerin stated:

"With respect to Bill No. 1936, where the deceased was William McGinnis, and Bill No. 1937 where the deceased was Claude Fisher, I have indicated to counsel at a sidebar conference that my offhand impression is that the Commonwealth has not sufficiently associated the defendant with either of these incidents by evidence that would satisfy a fact finding body beyond a reasonable doubt, and it would seem to be in order for counsel for defendant to move for a directed verdict on those Bills.

"I will accept the motion as if made by Mr. Singer as to Bills Nos. 1936 and 1937.

"Further, if a similar situation develops with respect to any other indictment or indictments and it is made to appear to the satisfaction of the Assistant District Attorney and to counsel and to the Court that such a situation exists, a similar motion may be made and a similar ruling made. (End of sidebar.)

"Mr. Singer [relator's attorney]: Prior to the doctor's testimony, sir, it was agreed and it is on the record that as to McGinnis and Fisher there is a finding of not guilty.

"The Court: A verdict of not guilty made upon motion of counsel for defendant, to which no objection has been made by the Assistant District Attorney.

"Mr. Singer: Does that encompass the companion Bill of violation of the Pharmacy Act?

"The Court: I would think so because if the evidence of the doctor does not go to the alleged violation of the Pharmacy Act, it would seem to me to be in order to have verdicts of not guilty on the accompanying indictments." (N.T., pp. 170–171.)

So directed verdicts of not guilty as to the deaths of McGinnis and Fisher were entered. But this was not a case in either instance of a lack of proof that relator violated the Pharmacy Act being followed automatically by a directed verdict on the accompanying manslaughter bills.

Testifying as to the causes of death of McGinnis and then Fisher, Dr. Rieders had stated:

"This man died of wood alcohol poisoning, and in view of the fact that there are a variety of sources involved *I did not feel that I could pinpoint*

*the source in this or even attempt to."* (Emphasis added.)

"In my opinion, this was also a death which was due to wood alcohol poisoning. Although it was my opinion that this individual had been drinking Sterno, *there was nothing to indicate the source of the high amount of wood alcohol found in his blood at the time of death."* (Emphasis added.) (N.T., pp. 168 and 169.)

Judge Guerin then very properly stated that "the Commonwealth has not sufficiently associated the defendant with either of these incidents" and accepted a directed verdict on the Bills of Indictment. Clearly the directed verdict was understood to refer in the first instance to the involuntary manslaughter charge and not, as relator's counsel claims, to the Pharmacy Act violations. For it was relator's trial counsel who asked: "Does that [verdict of not guilty] encompass the companion Bill of violation of the Pharmacy Act?"

Judge Guerin's answer again demonstrates that relator's trial was not proceeding on just a misdemeanor-manslaughter theory. The Judge replied: "I would think so [that the not guilty verdict encompasses the companion Bill of violation of the Pharmacy Act] because if the evidence of the doctor does not go to the alleged violation of the Pharmacy Act, it would seem to me to be in order to have verdicts of not guilty on the accompanying indictments." (Here Judge Guerin means the accompanying Pharmacy Act indictments and not, as relator maintains, the accompanying manslaughter bills. See relator's brief, p. 7.)

My reading of the state court record turned up other support for my conclusion that relator was tried and found guilty of involuntary manslaughter as well as misdemeanor-manslaughter. But here I can do no better than to quote from the well-reasoned opinion of Mr. Justice Jones writing for a unanimous Pennsylvania Supreme Court:

"We have carefully reviewed Judge Guerin's opinion denying appellant's motion for a directed verdict and the adjudication he wrote as required by Rule 46 of the Superior Court Rules. Although we agree that at times he seems to have blurred the two theories upon which he based the convictions, we believe that he did consider the evidence and reached the conclusion that appellant was guilty of involuntary manslaughter.

"In his opinion at the close of the trial, Judge Guerin made the following remarks before even mentioning the Pharmacy Act:

'Involuntary manslaughter is an unlawful killing of another without malice. Involuntary manslaughter results where there is no specific intention to take life, but from the doing of a lawful act in an unlawful manner or from the doing of an unlawful act.

"There is an abundance of evidence in this case which satisfies me beyond a reasonable doubt that the conduct of the defendant with respect to all Bills of Indictment now remaining before me for disposition caused the death of the individuals named in the respective indictments. He proceeded without due caution. He was engaged in a business of selling a poisonous substance. He knew or should have known of the poisonous nature of the substance because in the majority, indeed, if not in all of the cases the container of the poisonous substance contained upon the lid thereof a warning in the shape of lettering stating that the contents were poison and containing the indication of danger which is known to all of us from early childhood, the familiar skull and crossbones.' " [N.T., p. 286.]

"Judge Guerin's later adjudication is somewhat more ambiguous because he

**1134**

devotes most of the opinion to a discussion of the Pharmacy Act. We feel, however, that the following excerpt indicates that he felt appellant was guilty of involuntary manslaughter as well as misdemeanor manslaughter:

" 'Defendant was charged in thirty-one Bills of Indictment with the offense of involuntary manslaughter. Involuntary manslaughter is defined as an unlawful killing of another without malice; it results where there is no specific intention to take life, but from the doing of a lawful act in an unlawful manner, or from the doing of an unlawful act. * * * It was clear that defendant proceeded without due caution; that he was engaged in a business of selling a poisonous substance; that he knew or should have known of the poisonous nature of the substance because in the majority, if indeed in not all of the cases, the container of the poisonous substance had written upon the lid thereof a warning in the shape of lettering stating that the contents were poison as well as that indication of danger which is known to all of us from early childhood, the familiar skull and crossbones' " [pp. 5 and 6.]

"In conclusion, then, we find that Judge Guerin did, in fact, consider the issue of involuntary manslaughter and did find appellant guilty of involuntary manslaughter. * * * " Commonwealth v. Feinberg, 433 Pa. 558, at 571 to 573, 253 A.2d 636, at 643, 644 (1969.)

### III.

### CONCLUSION

And in conclusion, I find that relator's claim that he was convicted by the appellate courts of a charge on which he was never tried is not supported by the record. Relator's remaining points are without merit and thus I shall deny relator's petition for writ of habeas corpus.